DIXIE MILL SUPPLY CO., INC., A CORPORATION, PLAIN-
TIFF-APPELLEE, v. H. B. SMITH MACHINE COMPANY,
A CORPORATION, DEFENDANT-APPELLANT.

Submitted January 20, 1942—Decided March 21, 1942.

Before BROGAN, CHIEF JUSTICE, and Justice HEHER.

For the plaintiff-appellee, *Ralph W. Haines*.

For the defendant-appellant, Davis & Davis (*James B. Davis, Jr.,* of counsel).

BROGAN, CHIEF JUSTICE. The answer of the defendant was struck out and the appeal is from the plaintiff's resulting judgment. The plaintiff, a corporation of the State of

Louisiana, brought suit against the defendant corporation for commissions, relying upon an agreement which arose out of correspondence between the parties which plaintiff avers gave it an exclusive power of sale of certain woodworking machines called "sanders," owned by the defendant company. A motion by the defendant to strike out the complaint as frivolous and insufficient in law was denied. The action of the trial court in this particular is made a ground of appeal. After answer was filed the plaintiff moved to strike out the answer on the ground it was frivolous, which motion was granted. This ruling, too, is set forth as error.

These are the facts: On November 29th, 1939, the plaintiff company wrote to the defendant saying that it had a prospective customer for two of the defendant's machines and asked the defendant if it would permit the plaintiff to offer them to the customer. On December 1st, 1939, the defendant company, by its president, replied saying, "Louisiana is now open territory and we will be very glad to work with you on this deal." The defendant enclosed a price-list and advised that the seller's allowance would be 15% of the quoted prices. The letter also said: "It is our ordinary custom to handle accounts direct with the customer, however if you prefer to handle it yourselves, it will be satisfactory." On December 2d, 1939, plaintiff wrote another letter and disclosed to the defendant the name of the prospective customer, namely, New Orleans Furniture Manufacturing Company; it also advised the defendant that the prospective purchaser was about to purchase two sanders and described the type of machine the customer was then using; also that the order would probably not be placed for some two or three weeks but that when catalogs were received, quotations and details would be submitted to the customer. The letter contained this statement: "In the meanwhile we would certainly appreciate your protection should any other local dealer request prices as we are very close to this account and certainly feel that we have a very good chance of securing this business." On December 5th, 1939, the defendant acknowledged this letter and said, among other things, "We will give you protection on this deal

in case we hear direct from the customer or from any other dealer." No time limit was stated by defendant. This letter, written by the president of the defendant company, further stated that it was satisfactory that the plaintiff "handle the account direct with the customer" and concluded with the statement that "the writer would be perfectly willing to make a trip to New Orleans if you [plaintiff company] think it would be of assistance in obtaining the business." An answering letter, dated December 6th, 1939, was written to the defendant stressing appreciation of the fact that the defendant would "protect us on this deal;" advising that the superintendent of the New Orleans Furniture Company (the prospective customer) was leaving on a business trip for a few days and that the plaintiff would let the defendant know the opportune time for the trip to New Orleans. The plaintiff's letter stated that there was a possibility that the Fader Machinery Company of Chicago might be asked "to quote on these machines;" and that "we thought you should know this as we are not aware as to whether or not Fader happens to be an agent of yours," in reply to which, on December 9th, 1939, the defendant wrote that the Fader Company represented the defendant in Chicago and some territory in the middle west but that "we would not allow them to quote on any machine on this job. In case we hear from them we will tell them we are already on the deal." On December 12th, the plaintiff advised the defendant that the superintendent of the New Orleans Furniture Company had returned to New Orleans and that plaintiff would be pleased to arrange an interview. On December 14th, plaintiff received a telegram from the defendant company saying that due to a "new sales arrangement" for the New Orleans territory it would be impossible to protect the plaintiff on the sale of these machines to the New Orleans Furniture Company after January 1st. Plaintiff replied at once and expressed astonishment at defendant's change of attitude; reminded the defendant that it had promised to protect the plaintiff on the matter and that the defendant's new "sales arrangement" should have excluded the sale to the New Orleans Furniture Company. This was the end of the correspondence.

It was admitted at the argument before the learned trial judge that the machines in question were sold some time during the month of January, 1940, by the Fader Company to the New Orleans Furniture Manufacturing Company at the price which the plaintiff was authorized to quote.

Taking up the first question raised on this appeal, viz., the court's refusal to strike out the complaint—the ruling on this motion was correct. It is our view that the defendant's first letter of December 1st, 1939, was in effect an offer to give the plaintiff exclusive agency for this particular sale and that the offer was accepted. No time limit was mentioned and therefore, under the circumstances, the plaintiff is presumed to have a reasonable time within which to perform. The defendant wrote "Louisiana is now open territory and we will be glad to work with you on this deal." The plaintiff, without doubt, relying on defendant's representations, disclosed the name of the prospective customer. Thus there appear an offer, an acceptance and consideration, which conferred a benefit on the defendant and was a detriment to the plaintiff, i. e., the disclosure of the prospect. Clearly there was a promise given in return for a promise, i. e., a bilateral agreement.

It is next argued that it was error to strike the answer, which with its separate defenses alleges (1) no agreement between the parties; (2) that the plaintiff did not accept the offer of the defendant dated December 1st; (3) that the promise of the defendant to pay a 15% commission on the sale was without consideration; (4) that there was no revocation of the authorization to sell but that the plaintiff abandoned its efforts to sell; (5) that the defendant conferred exclusive authority upon the plaintiff to make sale of the machines but that it was without consideration and that therefore on December 14th, it revoked this exclusive authority but "that it did not revoke the authority of the plaintiff to make the sale concurrently with others," and (6) that the plaintiff did not bring about the sale in question. The defenses require but little discussion. The only valid element in them touches the question of revocation. The exchange

of letters between the parties and the things done as a result of the representations made resulted in an informal contract. And this, as we have pointed out, was a valid agreement. Neither side submitted affidavits to support or challenge the pleading—consequently we must consider the answer, in its several parts, at its face value. There was nothing to show that the plaintiff abandoned its efforts to sell the machinery. The only question in the case is whether the revocation of the exclusive authority was legally justified. An exclusive authority with no time specified is not of indefinite duration. Where no time for performance is fixed, a reasonable time is presumed to have been intended. This is the settled law in this state. *Aboczky* v. *Stier,* 126 *N. J. L.* 109; 18 *Atl. Rep.* (*2d*) 262. Notice of revocation of plaintiff's exclusive authority was given by the defendant on December 14th, and the time limited for performance by the plaintiff was fixed for January 1st, 1940. Plaintiff was advised that beyond this latter date its agency would not be "protected." Whether the stated interval of seventeen days was reasonable in this field of work, under the circumstances, was a fact question which, in the absence of uncontroverted proof on this element, the trial court was powerless to determine. This results in a reversal of the judgment and the award of a *venire de novo,* costs to abide the ultimate result.